UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
MUHAMMAD ESSA,                          :
                                        :
                        Plaintiff,      :        **MEMORANDUM AND ORDER**
                                        :           **24-cv-03985 (DLI)**
            -against-                   :
                                        :
PHILLIP SLATTERY, et al.,               :
                                        :
                        Defendants.     :
--------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Muhammad Essa ("Plaintiff") filed this undue delay suit pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, seeking an order compelling Defendants[1] to expedite and adjudicate two refugee visa petitions he filed in 2016 on behalf of his wife and daughter. *See*, Compl., Dkt. Entry No. 1. Defendants moved to dismiss this action as moot pursuant to Rule 12(b)(1) or, in the alternative, to stay this action indefinitely. *See*, Defs.' Mot. Dismiss ("Mot."), Dkt. Entry No. 15; Rosales Decl., Dkt. Entry No. 15-1; Gilligan Decl., Dkt. Entry No. 15-2. Plaintiff opposed the motion and cross-moved for leave to amend the Complaint pursuant to Rule 15(a). *See*, Pl.'s Cross-Motion Notice, Dkt. Entry No. 17; Pl.'s Br. Opp'n Mot. ("Opp'n"), Dkt. Entry No. 17-1; Pl.'s Proposed Am. Compl., Dkt. Entry No. 17-2. Defendants replied and opposed Plaintiff's cross-motion. *See*, Defs.' Reply Br. ("Reply"), Dkt. Entry No. 18.[2] For the reasons set forth below, Defendants' motion to dismiss is granted, and Plaintiff's cross-motion for leave to amend is denied.

---

[1] Defendants are various federal officials who are sued in their official capacities. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure ("Rules"), their successors automatically are substituted as party defendants.

[2] With their Reply, Defendants filed a redline of the proposed amended complaint due to Plaintiff's failure to comply with the Local Rules, which generally warrants denial of the motion without prejudice. *See*, Proposed Am. Compl. Redline, Dkt. Entry No. 18-1; *See also*, L. Civ. R. 15.1(a) (requiring the filing of "a version of the proposed pleading," with the motion, showing "all differences from the pleading that it is intended to amend or supplement").

## RELEVANT BACKGROUND[3]

In August 2016, Plaintiff, a U.S. permanent resident, filed three Form I-730 relative petitions (the "Petitions") with the U.S. Citizenship and Immigration Services ("USCIS"), seeking follow-to-join refugee ("FTJ") status for his wife and daughter (the "Beneficiaries"), who were in Pakistan. Compl. ¶¶ 7, 18-19; Swanson Decl. ¶ 6, Dkt. Entry No. 12-1; *See also*, 8 U.S.C. § 1157(c)(2)(A) (FTJ status available to eligible spouses and/or unmarried children of persons who have been granted refugee status). On April 24, 2017, USCIS completed "domestic processing" and "approved" the Petitions. Swanson Decl. ¶ 7. USCIS then transmitted the Petitions to the U.S. Embassy in Islamabad, Pakistan (the "Embassy") to determine the Beneficiaries' eligibility to travel to the United States. *Id.* ¶¶ 7-8.

On June 21, 2017, the Beneficiaries appeared at the Embassy for a travel eligibility interview before a consular officer, who determined that additional information and assurances were necessary. Stavros Decl. ¶ 7, Dkt. Entry No. 12-2. The Beneficiaries submitted the additional information requested. *Id.* ¶¶ 8-12. Thereafter, Plaintiff inquired on the status of the Petitions on several occasions but received no response. Compl. ¶ 24. As a result, on June 3, 2024 (*i.e.*, over six years since the last document submission to the Embassy), Plaintiff filed this lawsuit to compel Defendants' final adjudication of the Petitions without further delay and in accordance with their statutory duties. *Id.* ¶¶ 23, 28. Plaintiff contends that the seven-year, unexplained delay is unreasonable and warrants mandamus relief. *Id.* ¶¶ 6, 29-30.

After receiving notice of this action, on October 2, 2024, USCIS "initiated [an] immediate

---

[3] In resolving this motion to dismiss for lack of subject matter jurisdiction, the Court considers the allegations in the Complaint and undisputed evidence proffered by Defendants beyond those allegations. *See*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted); *See also*, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) ("[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading."). In opposing the fact-based motion, Plaintiff bears "the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Makarova*, 201 F.3d at 113 (citation omitted).

case review" and determined additional documentation was necessary.  Swanson Decl. ¶ 9.  Such additional documentation was received on November 25, 2024.  *Id.* ¶ 10.  However, on January 14, 2025, USCIS required more information to resolve "potential eligibility concerns."  *Id.* ¶ 11.

A few days later, on January 20, 2025, the President of the United States issued Executive Order No. 14163, entitled "Realigning the United States Refugee Admissions Program" (the "Executive Order").  *Id.* ¶ 5.  Subject to an exception for individual cases deemed to be "in the national interest" and non-threating "to the security or welfare of the United States," the Executive Order suspends the entry of refugees into the United States pursuant to the U.S. Refugee Admissions Program ("USRAP") and any decisions on refugee-based applications.  Exec. Order No. 14163, 90 Fed. Reg. 8459 (Jan. 20, 2025).  The Executive Order took effect on January 27, 2025, and is effective until the President "determine[s] that resumption of the USRAP is in the interests of the United States."  *Id.*  Thus, the Government suspended further processing of the Petitions and notified the Beneficiaries of such action.  Swanson Decl. ¶ 12; Stavros Decl. ¶ 14.

On February 10, 2025, various plaintiffs filed a putative class action in the U.S. District Court for the Western District of Washington, alleging that the Executive Order violates the U.S. Constitution, various provisions of the APA, and the Refugee Act of 1980, 8 U.S.C. §§ 1101 *et seq.* ("Refugee Act").  *See*, *Pacito v. Trump*, No. 2:25-cv-00255 (W.D. Wash.).  Subsequently, the *Pacito* district court preliminarily enjoined the Executive Order.  *See*, *Pacito v. Trump*, 768 F. Supp.3d 1199 (W.D. Wash. 2025); *Pacito v. Trump*, 772 F. Supp.3d 1204 (W.D. Wash. 2025).

During the pendency of the *Pacito* injunction, the Embassy scheduled the Beneficiaries for a second travel eligibility interview.  Rosales Decl. ¶¶ 5-6.  On March 24, 2025, the Beneficiaries appeared at the Embassy for the interview.  *Id.*  The consular officer did not approve travel for the Beneficiaries and determined that: (1) security screening still was required for Plaintiff's wife; and

3

(2) Plaintiff's daughter "did not qualify as a child under the Child Status Protection Act." *Id.* A day later, on March 25, 2025, the Ninth Circuit partially stayed the *Pacito* injunction pending resolution of the appeal. *See*, *Pacito v. Trump*, 2025 WL 1325305, at *1 (9th Cir. Mar. 25, 2025), *opinion clarified*, 2025 WL 1325306 (9th Cir. Apr. 21, 2025) (declining to stay the injunction only as applied to applicants who, *inter alia*, were cleared for travel before January 20, 2025). Thereafter, the U.S. Department of State returned Plaintiff's daughter's Petition to USCIS and provided USCIS with "updated information for review" concerning Plaintiff's wife. Rosales Decl. ¶ 7; Gilligan Decl. ¶¶ 6-7. As of July 24, 2025, the Petitions remain pending. *Id.*

On July 30, 2025, the *Pacito* district court found that the plaintiffs plausibly pled their claims and adequately established jurisdiction and certified three subclasses, including a class of "all persons in the United States who are currently petitioning or will petition for family members to be admitted to the United States under the follow-to-join ("FTJ") refugee program" (the "*Pacito* FTJ Subclass"). *See*, *Pacito v. Trump*, 797 F. Supp.3d 1227, 1243 (W.D. Wash. 2025); *Pacito v. Trump*, 796 F. Supp.3d 692, 703 (W.D. Wash. 2025). The Government did not appeal either of those decisions, but the Ninth Circuit later vacated the district court's injunction in large part. *See*, *Pacito v. Trump*, ___ F.4th ___, 2026 WL 620449, at *29-30 (9th Cir. Mar. 5, 2026) (finding that the challenges to the Executive Order are unlikely to succeed).

## DISCUSSION

### I.    Mootness

"The doctrine[] of mootness . . . originate[s] in Article III's 'case' or 'controversy' language." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citations omitted). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *Id.* at 341. Therefore, "[w]hen a case becomes moot, the federal

4

courts 'lack[ ] subject matter jurisdiction over the action.'" *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (citation omitted); *See also*, *Makarova*, 201 F.3d at 113 (Rule 12(b)(1) dismissal appropriate when the court lacks "power to adjudicate" the action).

"A case becomes moot . . . 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted); *Fox*, 42 F.3d at 140 (describing "[t]he required legally cognizable interest . . . as a requirement that a plaintiff have a 'personal stake' in the litigation" (citations omitted)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC*, 568 U.S. at 91 (citation omitted). The "'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Id.* at 90-91 (citation omitted).

In this context, a government agency's refusal to act on an immigration application "is a prerequisite for the existence of a case or controversy." *Shashiashvili v. Garland*, 2025 WL 16577, at *1 (E.D.N.Y. Jan. 2, 2025) (citations and internal quotation marks omitted); *Bokhari v. Garland*, 2023 WL 5283898, at *2 (E.D.N.Y. Aug. 17, 2023) (issuing a request for evidence in connection with a pending application "eliminat[es] the inaction predicate for an undue delay claim under the APA"). Therefore, this action became moot when Defendants resumed application processing by scheduling the second travel eligibility interview in 2025. *See*, *Shashiashvili*, 2025 WL 16577, at *1 (dismissing action as moot after interview was scheduled); *Uma v. U.S. Citizenship & Immigr. Servs.*, 2025 WL 943122, at *1 (E.D.N.Y. Jan. 8, 2025) (same); *Long v. Garland*, 2023 WL 6930674, at *2 (E.D.N.Y. Oct. 19, 2023) (same). Indeed, here, Defendants conducted the Beneficiaries' interview on March 24, 2025, and returned the Petitions to USCIS for further action.

In opposition, Plaintiff offers no legal support for his contention that this undue delay action remains a live controversy until the Petitions are adjudicated in full.  *See*, Opp'n ¶¶ 8-15. Virtually every district court in the Second Circuit has held that "a decision on the application itself is not necessary to deprive the Court of jurisdiction on mootness grounds." *E.g.*, *Yusupov v. Mayorkas*, 2021 WL 6105720, at *2 (E.D.N.Y. Dec. 23, 2021); *See also*, *Ke v. Alfonso-Royals*, 2026 WL 82451, at *2 (E.D.N.Y. Jan. 8, 2026) ("[The immigration] petition is rooted in delay that has now been cured by the Government's action.").  The steps taken by Defendants since the commencement of this action have allowed the Petitions "to move forward, granting [Plaintiff] the relief sought in this lawsuit." *Shashiashvili*, 2025 WL 16577, at *2.

Moreover, Plaintiff makes no attempt to argue that any of the exceptions to the mootness doctrine apply here.  Notwithstanding, there is no evidence or specific, non-speculative allegation that the actions that resulted in mooting this action were "done as a matter of gamesmanship" or even that "delayed adjudication" will reoccur.  *Chen v. Noem*, 2025 WL 1466205, at *2-3 (2d Cir. May 22, 2025) (summary order), *cert. denied*, 607 U.S. ___ (2026).  The fact that the Executive Order has paused further consideration of the Petitions does not mandate a different result. Plaintiff's claims are premised on agency inaction and delay based on the allegations that predate the issuance of the Executive Order.[4]  Therefore, to find that Defendants will continue delaying final action once the Executive Order's suspensions are lifted, the Court would have to engage in speculation, which is inappropriate.  *See*, *Ke*, 2026 WL 82451, at *2.  As the action is moot, the Complaint is dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

---

[4] Defendants' argument that Plaintiff's claims are duplicative of those claims asserted by the mandatory *Pacito* FTJ Subclass, which undisputedly Plaintiff is a member of, lacks merit.  *See*, Reply at 10-12.  While they present common questions of law, the Complaint does not challenge the Executive Order or Defendants' inaction resulting from the Executive Order's mandate.  Simply put, any claim that the Executive Order violates the Constitution and federal law arises out of conduct, transactions or occurrences separate from those alleged in the Complaint.

## II.    Leave to Amend

To begin, Plaintiff proceeds pursuant to the incorrect Rule.  As he proposes new claims based on post-filing events (*e.g.*, the Executive Order's indefinite processing suspension of immigration applications for refugee status), the cross-motion for leave to amend must be construed as one to supplement pursuant to Rule 15(d).  *See*, Proposed Am. Compl. ¶ 40.  That Rule provides that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).  The Court has discretion to grant a Rule 15(d) motion "upon reasonable notice and upon such terms as may be just." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) ("[L]eave . . . should be freely permitted when the supplemental facts connect it to the original pleading.").  "Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

While Rule 15(d) provides that the Court has discretion to "permit supplementation even though the original pleading is defective in stating a claim or defense," there is none when the original action is moot.  In *Fox*, the Second Circuit held that "the district court did not abuse its discretion in denying . . . permission to amend . . . after the case had become moot."  42 F.3d at 144.  In doing so, the *Fox* district court distinguished "between allowing a plaintiff to amend his or her complaint to cure a failure to properly allege jurisdiction and allowing a plaintiff who no longer has a personal stake in the outcome of the controversy to amend a complaint to revive an otherwise dead or moot action." *Fox v. Bd. of Trs. of State Univ. of New York*, 148 F.R.D. 474, 487 n.30 (N.D.N.Y. 1993), *aff'd*, 42 F.3d 135, 144 (2d Cir. 1994).

As in *Fox*, here, there is nothing to cure because this action is moot. *See, Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*, 700 F.2d 889, 893 (2d Cir. 1983) (affirming district court's decision to deny leave to amend where the plaintiff sought "not to remedy inadequate jurisdictional allegations, but rather to substitute a new action over which there is jurisdiction for one where it did not exist"), *cert. denied*, 464 U.S. 845 (1983); *H.B. v. Byram Hills Cent. Sch. Dist.*, 2015 WL 5460023, at *5 (S.D.N.Y. July 20, 2015) (denying leave to amend "because the Court lacks subject matter jurisdiction over this action"). Indeed, this action has been moot since in or about March 2025, and Plaintiff did not seek leave to supplement until five months later in August 2025 (and nearly eight months after the issuance of the Executive Order). Even if the Court were to liberally construe core justiciability requirements, the proposed supplement is premised on the unlawfulness of the Executive Order, which cannot relate back to the Complaint because the proposed new claims arise out of separate conduct. *See*, Fed. R. Civ. P. 15(c)(1)(B), 15(d). Accordingly, as the Court "is without power to act," Plaintiff's cross-motion to supplement must be denied. *Fox*, 148 F.R.D. at 487 n.30 (citations omitted).[5]

---

[5] In the alternative, the Court would exercise its discretion to deny the cross-motion as unduly prejudicial because the proposed supplement violates the "rule against duplicative litigation" under which a district court, "[a]s part of its general power to administer its docket, . . . may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citation omitted); *See also*, *Lopez v. Ferguson*, 361 F. App'x 225, 226 (2d Cir. 2010) (summary order) (applying rule in the class action context). Admittedly, the proposed supplement is duplicative of the certified *Pacito* FTJ Subclass' claims. *See*, Pl.'s Aug. 6, 2025 Letter, Dkt. Entry No. 16 (stating his intent "to add claims challenging the constitutionality of [the] Executive Order" and "to bring [his] own claims, rather than claims as anticipated class member under *Pacito* . . ."). Plaintiff undisputedly belongs to the mandatory Subclass; the *Pacito* defendants represent the interests of the Executive in charge of implementing the Executive Order; and the claims, as well as the allegations upon which they are based, and the relief sought are virtually identical. *Compare*, Proposed Am. Compl. ¶¶ 31, 36-37, 40-47 (asserting that the USRAP suspension violates the APA, the Refugee Act, separation-of-powers principles, and due process), *with*, *Pacito* Am. Compl. ¶¶ 229-38, 242-44, 254-57 (same). As Plaintiff proposes a duplicative action raising the possibility of inconsistent judgments, judicial economy and the interests of justice would militate in favor of denying the cross-motion.

## **CONCLUSION**

For the reasons set forth above, the action is dismissed without prejudice for lack of subject

matter jurisdiction.  The Clerk of Court respectfully is directed to close the case.

SO ORDERED.

Dated:  Brooklyn, New York
        March 31, 2026

/s/
DORA L. IRIZARRY
United States District Judge
